UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HOUGLAND,<br><br>        Petitioner,<br><br>    v.<br><br>SCOTT KERNAN, Warden,<br><br>        Respondent. | No. 2:17-cv-2497 WBS AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding through counsel on an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2014 conviction for first-degree murder and related offenses. ECF No. 1. Respondent has answered, ECF No. 14, and petitioner has filed a traverse, ECF No. 15.

BACKGROUND

I.    Proceedings in the Trial Court

    A.  Preliminary Proceedings

An amended information charged petitioner Christopher Hougland with the murder of Samuel Forseth and alleged that petitioner personally used a deadly weapon, a knife, in the commission of the offense.

////

////

B.  The Evidence Presented at Trial[1]

The evidence at trial showed that in the early morning of June 27, 2013, petitioner fatally stabbed the victim, Samuel Forseth, multiple times. The attack began in petitioner's home and continued outside onto the street as the victim tried to escape and call for help. Petitioner then asked a witness to call 911, claiming he was there to help the victim. When first responders arrived, petitioner appeared to be calmly attempting first aid; he said he had served as a medic in Afghanistan. Petitioner had three small lacerations on his body. He said he was in shock because he had just killed his best friend. He claimed he had tried to stop the victim from killing himself, but the victim had turned on him and stabbed him, forcing petitioner to defend himself. However, the police observed that although petitioner had a great deal of blood on his arms and face, there was no blood around his eyes, and he had a pair of sunglasses on top of his head. A forensic pathologist, Dr. Mark Super, testified that the victim suffered numerous injuries, including defensive wounds on his hands, four deep stab wounds in his chest, and two separate neck wounds which cut the victim's larynx, epiglottis, esophagus, tongue, thyroid gland, carotid artery, and jugular vein. Dr. Super opined that if all of these wounds to his neck had been inflicted while the victim was still in petitioner's house, the victim would not have been able to make it across the street or call out for help.

The defense called Dr. Harry Bonnell, a physician trained in forensic pathology, to testify about the victim's cause of death and autopsy. ECF No. 13-3 at 108. Dr. Bonnell testified that the victim's wounds would have allowed him to maintain consciousness for at least a minute and call out for help, which contradicted Dr. Super's testimony. ECF No. 13-3 at 115; ECF No. 13-4 at 4.

C.  Outcome

A jury convicted petitioner of first-degree murder and found the allegation of personal use of a deadly weapon true. The trial court sentenced petitioner to an aggregate state prison term of

---

[1] This statement of facts is in large part adapted from the opinion of the California Court of Appeal, Lodged Doc. No. 16 (ECF No. 13-16) at 2-3. The undersigned has independently reviewed the trial transcript and finds the summary to be accurate.

26 years to life (25 years to life for first degree murder, plus one year consecutive for the deadly weapon allegation).

II.     Post-Conviction Proceedings

Petitioner timely filed a <u>Wende</u>[2] brief in the California Court of Appeal. Lodged Doc. No. 15 (ECF No. 13-15). On August 19, 2015, the appellate court affirmed the judgment of conviction and found "no arguable error that would result in a disposition more favorable to defendant." Lodged Doc. No. 16 (ECF No. 13-16). It appears that petitioner did not seek review in the California Supreme Court.

Petitioner filed a petition for writ of habeas corpus in the Superior Court for Tehama County on June 12, 2016. Lodged Doc. No. 5 (ECF No. 13-5) at 4-15. The court denied the petition in a written decision on August 9, 2016. Lodged Doc. No. 6 (ECF No. 13-6) at 20-23. Petitioner next filed a habeas petition in the California Court of Appeal, Lodged Doc. 8 (ECF No. 13-8) at 4-25, which issued an order to show cause, Lodged Doc. No. 9 (ECF No. 13-9) at 44. The superior court held an evidentiary hearing pursuant to the order to show case, at which petitioner and his attorneys testified. Lodged Doc. 11 (ECF No. 13-11) (transcript of proceedings). At the conclusion of the hearing, the trial court orally denied the petition. <u>Id.</u> at 99. Petitioner then filed another habeas petition in the California Court of Appeal, which was silently denied. Lodged Docs. 13-1 (ECF No. 13-1) at 1 (petition); 17 (ECF No. 13-17) at 47 (order denying petition). The California Supreme Court denied petitioner's final application for relief on August 30, 2017. Lodged Docs. 13-17 (petition for review); 13-20 (order denying review).

The instant federal petition was filed November 29, 2017, ECF No. 1, respondent answered on March 15, 2018,[3] ECF No. 14, and petitioner filed his traverse on April 2, 2018. ECF No. 15.

////

---

[2] Under <u>People v. Wende</u>, 25 Cal.3d 436, 400 (1979), appointed counsel may file an appellate brief requesting the court to independently review the entire record "to determine for itself whether there were any arguable issues."

[3] Respondent's answer contains no affirmative defenses and instead responds to the merits of petitioner's claims. Accordingly, petitioner's points and authorities related to timeliness and tolling, <u>see</u> ECF No. 1-1 at 50-52, will be disregarded.

1          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

2          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court.  Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 563 U.S. at 102.

## DISCUSSION

### I. Claims One Through Five: Ineffective Assistance of Counsel

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that his trial attorneys, Jonathan Griffith and Brendan Blake, as well as his appointed appellate counsel, Carol Foster, provided ineffective assistance of counsel ("IAC").  ECF No. 1 at 22-50.  Petitioner presents five discrete IAC claims, each of which is addressed here.

First, petitioner claims that trial counsel provided ineffective assistance when they failed to put on an available defense based on post-traumatic stress disorder ("PTSD").  ECF No. 1 at 23.  Petitioner specifically alleges that counsel did not have him examined by a PTSD expert and that they declined to raise the defense despite his request that they do so.  Id. at 24.  He states that a psychiatrist, Dr. L. Ross Clark, was willing to testify on petitioner's behalf about his mental state, and would have provided evidence that "[petitioner's] PTSD would have supported the defense theory that [he] *reasonably* believed he needed to act in self-defense."  Id.  at 24-25.

1    Petitioner further contends that counsel's decision was prejudicial because "the jury might well
2    have found that petitioner lapsed into a dissociated state, went 'automatic' and cut the victim's
3    throat during the victim's knife assault on him." Id. at 27.

4    Second, petitioner contends that his trial counsel provided ineffective assistance when
5    they failed to call him to testify in his own defense. Id. at 28. Petitioner argues that had counsel
6    raised a PTSD defense, he could then have explained to the jury the effects PTSD had on him and
7    shown that his PTSD caused him to "act[] according to his military training and experiences"
8    when he cut the victim. Id.

9    Third, petitioner alleges that he was prejudicially deprived of effective counsel when his
10   attorneys failed "to make informed tactical decisions, based on adequate investigation and
11   preparation, in regards to a government informant." Id. at 29. The underlying facts of this claim
12   are as follows. Pretrial, the prosecution disclosed in discovery that a jailhouse informant had
13   evidence, in the form of a jail "kite" (note or letter), that petitioner had planned to kill the victim.
14   Id. At the time, trial counsel submitted the kite for handwriting analysis, which confirmed that
15   the handwriting matched petitioner's. Id.; ECF No. 13-11 at 76-77. Trial counsel then made the
16   decision to not put on a PTSD defense or put petitioner on the stand, in order to avoid opening the
17   door to admission of the kite in rebuttal. Id. at 30. Petitioner now claims that the handwriting
18   analysis was not adequate, and thus trial counsel's decision to forgo a PTSD defense and his
19   testimony in support of it was an uninformed decision. Id. at 32.

20   Fourth, petitioner argues that trial counsel provided ineffective assistance because they
21   failed to call as a witness the victim's wife and elicit testimony from her about the "victim's prior
22   provocative and violent acts towards her." Id. at 35. Before trial, petitioner told his trial counsel
23   that the victim's wife had sought a restraining order against the victim. Id. Petitioner also alleges
24   that his attorneys never spoke with the victim's wife, despite serving her with a subpoena for trial.
25   Id. He argues that the victim's wife could have testified that the victim threatened suicide before
26   and was violent, which would have corroborated his theory of the case and contradicted the
27   prosecution's theory. Id. at 37.
28   ////

Fifth, petitioner alleges that his appellate counsel provided ineffective assistance because she failed to conduct a "timely and adequate investigation into IAC claims as to trial counsel and to pursue a habeas petitioner on petitioner's behalf." Id. at 39. Petitioner argues that appellate counsel's decision to not address trial counsel's ineffective assistance was uninformed because she did not consider (1) that the prosecution could have "engaged in misuse of the informant, who was simultaneously providing information in another homicide prosecution," (2) that the information on the kite was inconsistent with facts known, and (3) that petitioner and the alleged informant would not need to use "kites" because they were housed in the same building. Id. at 40. Petitioner additionally contends that appellate counsel should have argued that trial counsel was ineffective in not utilizing the information from the victim's wife's declaration. Id. at 41.

The petition sets out petitioner's theory of cumulative prejudice from the alleged instances of IAC as a separate Claim Eight. ECF No. 1 at 19-20; ECF No. 1-1 at 49-50. Prejudice is not a discrete ground for relief, but part of the analysis of Claims One through Five. It is therefore encompassed by the discussion below.

### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defense. Strickland Washington, 466 U.S. 668, 688, 692 (1984). The proper measure of attorney performance is "reasonableness under prevailing professional norms." Id. at 688. In evaluating counsel's performance, the court applies a strong presumption that counsel's representation fell "within the wide range of reasonable professional assistance." Id. at 689. Counsel's strategic choices are generally accorded deference, but only if those decisions are reasonable and are based on reasonable investigations, research, and judgments. Id. at 690-91; see also Jones v. Wood, 114 F.3d 1002, 1010 (9th Cir. 1997) (strategic choices are not immune from challenge—they must be reasonable); Jennings v. Woodford, 290 F.3d 1006, 1014 (9th Cir. 2002) (to be reasonable, tactical choices require sufficient evidentiary basis).

////

Prejudice means that the error actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In assessing prejudice from deficient performance, the court must consider all of trial counsel's unprofessional errors against "the totality of the evidence" adduced at trial and in postconviction proceedings. Strickland, 466 U.S. at 695; Williams v. Taylor, 529 U.S. 362, 397 (2000).

A reviewing court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### C. The State Court's Ruling

As noted above, the state court first provided a written order denying petitioner's petition for habeas corpus, ECF No. 13-6 at 20, and subsequently provided an oral ruling after the California Court of Appeal ordered it to hold an evidentiary hearing, ECF No. 13-11 at 99. Because the oral decision was the latest reasoned decision, it is the proper basis for review here. See Hirschfield v. Payne, 420 F.3d 922, 928 (9th Cir. 2005) (applying AEDPA deference to oral ruling of state trial court).

The state habeas court ruled as follows:

> The court has heard the evidence and the issue in regards to ineffective assistance of counsel is whether the counsel was deficient in their performance and whether that deficiency resulted in prejudice. That's the Strickland case.
>
> And there's some specific allegations that the attorneys didn't put on a PTSD defense, they chose not to call [petitioner] to testify, and they failed to adequately investigate the alleged government informant, and chose not to call the victim's wife to testify.
>
> In looking at each of these areas, the attorneys both explained that they considered each of these issues and came to a conclusion and that it would hurt their client more than help him to do the things that now habeas counsel thinks that they should have done.
>
> The thrust of the case as far as the defense attorneys were involved were thinking at the time before trial is that they wanted to get a self-

defense instruction, which they received, and they did not want evidence to come in that would show motive. The evidence this court heard was that that motive never came in during trial; the motive being the marijuana grow, the business that [petitioner] and the victim were in together, and the note that [petitioner] allegedly wrote according to defense's own expert that he made statements in these notes that verified there was a marijuana business, that basically confirmed the facts that the People would need to argue motive. The defense attorneys were able to keep that evidence out. The only way they did that in their mind was to limit the evidence that came in so that rebuttal evidence couldn't come in, the rebuttal evidence being those notes.

In the PTSD records, or in the VA records, that they reviewed there was some indication that the defendant was quick to anger and was looking for fights. The defense attorneys did not want that evidence to come in because they were arguing self-defense.

In terms of the defendant testifying, if the defendant were to testify the defense attorneys believed that he would be cross-examined and asked questions about the motive and about his letters, or notes, or kites that he had wrote while in jail.

The pleadings indicated they didn't retain or perhaps they didn't even have handwriting analysis done. After today's hearing, it is clear that they did retain the expert, that an analysis was done and that they made a determination after getting verbal confirmation or a verbal report that they didn't want to have a written report because the information that the expert had was not helpful to [petitioner's] case.

Further, it was confirmed in today's hearing that the defense attorneys did look into and investigated the so-called informant, they were ready to impeach that informant.

And finally in choosing not to call the victim's wife, although it would be argued that there was some helpful information that the victim's wife could have provided, the decision to not call the victim's wife, whom was not wanting to testify for [petitioner], the testimony today was that the wife was sad that her husband had been killed and angry at this [petitioner], did not have good things to say about [petitioner]. And the fact that the defense attorneys opined that this witness could hurt them, I believe is an understatement. I think a jury would have been very interested to know what the victim's wife would say. And although it is not a guarantee she would have been allowed to say some of the things as counsel pointed out if it was just based on hearsay, the fact that her husband was killed and she was not happy about that, the chances that she might say something that was damaging to the defendant was high, especially when she also in detail discussed the marijuana grow. The defense attorneys' desire to keep that evidence out was paramount, as they have described today, to everything they did. They wanted to keep the motive out and they basically succeeded in doing that. They kept the motive out. It is this court's opinion that that was a—not only was not a deficient performance, but it was a good performance in that they were able to keep the motive out and that can be damaging

9

to the People's case when they cannot—although it is not required to show when they can't show motive for a killing, it is very difficult for a jury to convict sometimes and the defense attorneys did a good job in keeping that out. I don't believe a showing was made that their performance was deficient.

And even if we could come to the place in which we said, okay, they should have called the victim's wife because it would have shown that the victim had been violent in the past, I don't think that we get to the point of prejudice, which is the second prong of the Strickland test. I don't believe that it's been shown that any different outcome would have occurred if that evidence was presented. In fact, as I've stated in my ruling, I think it would have hurt the defense case more than it would have helped.

The further grounds listed in the petition, including the appellate attorney's failure to investigate, I believe that we can take what these attorneys did and then argue. I think it was appropriate for Mr. Barone to argue, well, if they failed to do what they should have done, then the appellate attorney should have done something. And because I'm finding that their performance was not deficient, I don't believe the appellate attorneys failed in their investigation of IAC, or ineffective assistance of counsel.

There was no evidence in regards to the Department of Corrections. And for the record, there was some comment made about that in argument and I think it is important to note that any lack of communication was not between Mr. Barone and the CDCR, but it was prior habeas counsel that had problems with CDCR and not this counsel.

For all of those reasons, the petition for habeas corpus is denied.

ECF No. 13-11 at 99-103.

### D. Objective Reasonableness Under § 2254(d)

The state habeas court heard testimony from trial counsel, made implicit credibility determinations that are entitled to deference here,[4] and accordingly found that counsel had made reasoned strategic decisions as to each challenged action. The court then found no deficient performance within the meaning of Strickland, which is to say that the court found counsel's choices to have been reasonable. Id. at 99-103. This court finds nothing objectively unreasonable about the state court's fact finding, its reasoning, or its conclusions. Strickland

---

[4] See § 2254(d)(2), (e)(1). In this court, petitioner has not proffered clear and convincing evidence to rebut the presumption of correctness and demonstrate that counsel's reasons for their litigation decisions were different from those to which they testified at the superior court evidentiary hearing.

establishes a "strong presumption that counsel exercised acceptable professional judgment in all significant decisions made," 466 U.S. at 689, and on the facts and circumstances of this case, it was entirely reasonable for the state court to find that petitioner had not overcome that presumption.

A petitioner bears the burden of rebutting the strong presumption that strategic decisions by counsel are reasonable, and the absence of evidence cannot overcome the presumption. Dunn v. Reeves, 145 S. Ct. 2405, 2410 (2021) (per curiam). Here, each decision made by counsel had a reasonable strategic basis, even if different decisions could also have been justified. The decision to keep out evidence of petitioner's anger issues and desire to fight was valid given petitioner's self-defense theory. It cannot have been unreasonable for counsel to rely on self-defense rather than a PTSD defense, given petitioner's statements at the scene that he had been attacked by the victim, and the inherent dangers of a PTSD defense in opening the door to petitioner's volatility. Equally reasonable was counsel's decision to advise to petitioner not to testify.[5] Had he testified, petitioner would have been subject to cross-examination about possible motives, and the door would have been opened for the informant evidence demonstrating premeditation for the killing. Further, trial counsel conducted an adequate investigation into the authenticity of the kite—a handwriting expert concluded that the handwriting was a match for petitioner's handwriting. ECF No. 13-11 at 76-77. Finally, any argument that trial counsel performed deficiently when they chose not to call the victim's wife as a witness is simply confounding.

The state habeas court's findings regarding these matters are amply supported by the record, and nothing about that court's Strickland analysis is inconsistent with the Supreme Court's Strickland jurisprudence. The record plainly establishes that counsel's various strategic decisions were based on reasonable preliminary investigation (such as the kite) or on reasonable decisions that specific avenues of investigation were not necessary (such as petitioner's PTSD). Accordingly, relief is unavailable under clearly established federal law. See Harrington v. Richter, 562 U.S. 86, 109 (2011) (state court reasonable rejects a Strickland claim where potential defenses

---

[5] Petitioner did not challenge the validity of his waiver to testify and from what the court can discern from the record, his waiver appears to be valid. ECF No. 13-3 at 103.

were investigated or reasonable decisions were made that specific avenues of investigation were not necessary.).

Even without reference to § 2254, petitioner's ineffective assistance claims would fail. None of the alleged attorney errors are sufficient to overcome the presumption of reasonable strategy that Strickland requires. And in light of the evidence as a whole—especially the petitioner's admission that he killed the victim—it is not reasonably probable that there would have been a different result had his trial counsel provided a PTSD defense, advised him to testify, called the victim's wife, or conducted an additional investigation into the government informant.

Because the trial IAC claims are weak, appellate counsel cannot have performed deficiently in failing to raise them. Counsel has no constitutional obligation to raise every frivolous, or even non-frivolous, issue requested by petitioner. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). This claim should also be denied.

II. Remaining Claims

Federal habeas corpus jurisdiction is limited to claims that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, federal habeas relief is available only for challenges to the duration or legality of a prisoner's confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). To be cognizable in habeas, a claim must necessarily impact the fact or duration of custody. See Nettles v. Gounds, 830 F.3d 922, 931, 934 (9th Cir. 2016) (en banc). The petition before the court includes two putative claims which do not relate to the legality of petitioner's conviction the duration of his confinement. Claim Six alleges that petitioner's state habeas claims were timely and, in the alternative, that any delay in filing his state court habeas petitioner should be excused because of his appellate counsel's ineffective assistance. ECF No. 1 at 14-16; ECF No. 1-1 at 43-47. Claim Seven alleges that petitioner was denied the right to counsel, due process of law, and meaningful access to the courts during his state habeas proceedings by the California Department of

Corrections. ECF No. 1 at 17-18; ECF No. 1-1 at 47-49.

Claim Six does not involve the fact or duration of petitioner's custody, nor allege any violation of his federal rights. Accordingly, it provides no cognizable basis for federal habeas relief. To the extent that this claim was pled in an attempt to overcome potential affirmative procedural defenses such as untimeliness or procedural default, none were asserted by respondent. Accordingly, Claim Six amounts entirely to surplusage on an issue that has not been presented.

Claim Seven does allege violations of petitioner's constitutional rights, but not violations that implicate the validity of his conviction or sentence. To the contrary, Claim Seven alleges that the violations were caused by the Department of Corrections in the course of petitioner's confinement. Conditions of confinement claims are available only under 42 U.S.C. § 1983, not in habeas. See Nettles, 830 F.3d at 931(claims not within "the core of habeas corpus" within the meaning of Preiser, 411 U.S. at 487, must be brought, "if at all," under § 1983); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.").

For these reasons, Claims Six and Seven do not come within this court's habeas jurisdiction nor provide any cognizable basis for relief.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's Claims One through Five was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Claims Six and Seven must be denied for lack of jurisdiction.

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 14, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE